UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EDITH MAE MAY,

        Plaintiff,

  v.                                  Case No. 21-cv-0629-bhl

HEALTH SERVICES UNIT, et al.,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Edith Mae May, who is currently serving a state prison sentence at the Taycheedah Correctional Institution and representing herself, filed a complaint under 42 U.S.C. §1983, alleging that Defendants violated her civil rights. This matter comes before the Court on May's motions for leave to proceed without prepayment of the filing fee and to amend the complaint. Dkt. Nos. 2, 10.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because May was incarcerated when she filed her complaint. *See* 28 U.S.C. §1915(h). The PLRA allows a prisoner plaintiff the opportunity to proceed with her case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee, and then she must pay the balance of the $350 filing fee over time through deductions from her prisoner account. 28 U.S.C. §1915(b)(1).

On July 12, 2021, the Court ordered May to pay an initial partial filing fee of $58.72. Dkt. No. 8. A couple of weeks later, May filed a letter informing the Court that she cannot afford to pay the fee. She asserts that she has a balance of $47.93 in her release account; she does not specify how much she has in her regular account. Dkt. No. 9 at 2. She explains that she is indigent and "will not be able to pay the filing fee for any of the future litigation that [she has] to file." *Id.* at 1. She asks the Court to tell her "what [to] do concerning payment of filing fee." *Id.*

In support of her petition to proceed *in forma pauperis*, May filed her prison trust account statement covering the period of January 6, 2021 through July 6, 2021. Dkt. No. 7. The statement reflects start and end balances of $0, confirming May's assertion that she cannot afford to pay the $58.72 initial partial filing fee. However, the statement also shows that, on January 19, 2021, she received a deposit of $600, on February 15, 2021, she received a deposit of $12.38, on April 5, 2021, she received a deposit of $1,400, and on April 30, 2021, she received a deposit of $21.37. During that six-month period, she also received five "involuntary unassigned" payments of about $4.00 each. With deposits of more than $2,000 in six-months, it begs the question—how did May spend all that money?

According to the statement, May spent more than $200 at the canteen and on media purchases, and more than $200 was deducted to repay the state for legal loans it has given her to pay for supplies, postage, and copies. In addition, more than $500 was deducted to pay filing fees that she owes for prior federal cases. (Since 2013, May has filed more than 30 cases in the Eastern District of Wisconsin; she currently has 5 open cases.) Additional deductions were made to repay medical co-payments and copy charges (unrelated to litigation) and to satisfy victim restitution orders.

The PLRA states that, "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the person has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). The Seventh Circuit has emphasized that this section of the PLRA "comes into play only when 'the prisoner has no assets *and no means* by which to pay the initial partial filing fee.'" *Newlin v. Helman*, 123 F.3d 429, 435 (7th Cir. 1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000) (citing 28 U.S.C. § 1915(b)(4)) (emphasis in the original). "A prisoner with periodic income has 'means' even when he lacks 'assets.'" *Newlin*, 123 F.3d at 435.

May currently has insufficient "assets" to pay the $58.72 initial partial filing fee—her regular account balance is at zero and she has only $47.93 in her release account. But she had the "means" to pay the fee—she received more than $2,000 during the six-month period prior to her filing her lawsuit, which is more than enough to pay the $58.72 fee. The Court acknowledges that a significant portion of the deposits into her account was deducted to pay past filing fees in other federal cases and to repay legal loans. However, the Court also notes that May voluntarily assumed those financial burdens. *See Lindell v. McCaughtry*, Case No. 01-C-209, 2004 WL 225074 (W.D.

Wis. Jan. 23, 2004) (holding that there is no discernable difference between an inmate who spends his income on lawsuits and one who spends his income at the canteen); *Lindsey v. Wiegle*, Case No. 18-C-0258, ECF No. 11 (E.D. Wis. May 8, 2018).

Because May had the means to pay the fee, the Court lacks authority under §1915(b)(4) to waive her obligation to pay the initial partial filing fee in this case. Typically, after denying a request to waive the initial partial filing fee, the Court would give a plaintiff additional time to pay the fee, but for the reasons explained below, doing so in this case would be futile because May's complaint fails to state a constitutional claim. Accordingly, the Court will dismiss this case based on May's failure to pay the initial partial filing fee.

Finally, the Court reminds May that, under 28 U.S.C. §1915(b)(1), she is required to pay the $350 statutory filing fee for every civil action she brings regardless of the reason why the case is dismissed and regardless of whether the Court dismisses the case or she voluntarily dismisses it. If May currently lacks assets to pay an initial partial filing fee because she has chosen to spend her money elsewhere, she should consider whether she wants to add to her significant debt load before she files a new case.

## ALLEGATIONS[1]

According to May, she has self-harmed at least twenty times since her arrest in January 2015. Dkt. No. 1-1 at ¶2. May states that the Psychological Services Unit (PSU) "doctors and clinicians" know about her self-harm and suicide attempts, so her medication (even Tylenol) has been "staff controlled" since 2018, meaning the medication must be dispensed by a medical professional. *Id*. at ¶¶4-5. May explains that she has asked Dr. Detrana to allow her to "keep on person" her medication, but Dr. Detrana "denies [her] every time." *Id*. at ¶6.

On January 27, 2020, Jane Doe "Medication Cart RN" allegedly gave May a card of Meloxicam to "keep on person;" May "said ok" and took the medication. Dkt. No. 1 at ¶7; *see also* Dkt. No. 10-1, ¶2. Later that day, May received a minor conduct report for possessing contraband (quilling paper). *Id*. at ¶9. May explains that she usually self-harms when she is in a tough spot, such as when she is sent to the restricted housing unit, when she gets a conduct report,

---

[1] On August 9, 2021, May filed a motion to amend her complaint to add additional defendants. Dkt. No. 10. Civil Local Rule 15(a) states that a motion to amend "must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." Civ. L. R. 15(a) (E.D. Wis). May's motion does not comply with this requirement, so the Court will deny her motion. However, the Court will address the proposed claims against Jane Doe "Medication Cart RN," RN Mr. Fischer, and HSM Radcliff, which are the defendants May's motion seeks to add.

or when she is angry or overwhelmed. *Id*. at ¶8. May believed that she may be going to the restricted housing unit that day, so she "took 30-40 of them [Meloxicam pills] without anyone knowing about it." *Id*. at ¶¶9-13. May says that she "walked around with the medication in [her] hand and a cup of water in the other hand" for at least 30-45 minutes, but no one noticed. *Id*. at ¶¶14-15. She then went to the bathroom and took all the pills. *Id*. at ¶16. May states that she then told sergeant Bohnlein (not a defendant) that "they might want to take [her] to the hospital but [] would not tell her why." *Id*. at ¶17. May asserts that she eventually told Bohnlein what happened, and they took her to the hospital. *Id*. at ¶18. Around that same time, RN Mr. Fisher allegedly took the Meloxicam container. Dkt. No. 10-1 at ¶2. May states that, when the Institution Complaint Examiner (ICE) investigated the inmate complaint related to this incident, the Meloxicam container was "missing." *Id*. May believes that Jane Doe "Medication Cart RN," RN Mr. Fisher, and HSM Radcliff were therefore a part of a "conspiracy." *Id*.

Upon returning from the hospital, May was placed in observation overnight and was released in the morning after she spoke to a doctor. Dkt. No. 1-1 at ¶¶19-21. May states that she "did not even receive any additional treatment or therapy for trying to kill [herself]," *id*. at ¶22, yet she also states that she spoke to her PSU clinician for an hour and that a nurse practitioner later followed up with her, *id*. at ¶¶23-24. May states that "there was no reason [she] should have been given those Meloxicams" and that the staff members who were involved in giving her the medication "never once checked her file" to follow doctor's orders not to allow her to keep her medication on person. *Id*. at ¶¶25-27.

## ANALYSIS

The Court has a duty to review "before docketing . . . or . . . as soon as practicable after docketing" any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A. "To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

May seeks to assert an Eighth Amendment claim, along with a state law "negligence" claim based on alleged inadequate hiring practices and a failure to catch the error with her medication. Dkt. No. 1-1, ¶¶ 1 at 33-34. The Seventh Circuit has explained that, "in order to establish a violation of the Eighth Amendment, a plaintiff must show that a prison official was deliberately indifferent to a substantial risk of serious harm to an inmate. Negligence on the part of the official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted).

May fails to state a claim under the Eighth Amendment because according to her, none of the Defendants "actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." May asserts that she accepted the medication from the nurse without informing her that the doctor had refused to allow her to possess her medication, that staff members failed to double check her medical file, that she walked around with the pills and water but no one noticed, and that she took the pills "without anyone knowing." In light of these allegations, the Court cannot reasonably infer that Defendants "knew" May faced a substantial risk of serious harm. At most, May states a claim for negligence, but allegations of negligence are insufficient to support a claim for deliberate indifference. *Figgs v. Dawson,* 829 F.3d 895, 903 (7th Cir. 2016); *see also McCann v. Ogle Cnty.,* 909 F.3d 881, 886–87 (7th Cir. 2018) ("A showing of negligence or even gross negligence will not suffice."). Because May fails to state a federal claim, the Court may not exercise supplemental jurisdiction over any possible state law claim. Thus, if May wants to pursue state law negligence claims, she must do so in state court.

## Conclusion

**IT IS THEREFORE ORDERED** that May's letter request to waive the initial partial filing fee (Dkt. No. 9) is **DENIED** and her motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **DENIED.**

**IT IS FURTHER ORDERED** that May's motion to amend the complaint (Dkt. No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** based on May's failure to pay the filing fee.

**IT IS FURTHER ORDERED** that the agency having custody of May shall collect from her institution trust account the $350.00 statutory filing fee by collecting monthly payments from her prison trust account in an amount equal to 20% of the preceding month's income credited to her trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If May is transferred to another institution, the transferring institution shall forward a copy of this Order along with May's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

Dated at Milwaukee, Wisconsin this 19th day of August, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, she will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, she must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed a "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, she will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.